UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **TRAVELERS CASUALTY & SURETY CO. OF AMERICA** | **CASE NO. 6:22-CV-00690** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **KARL BROUSSARD** | **MAGISTRATE JUDGE DAVID J. AYO** |

### RULING

Before the Court is a Partial Motion to Dismiss and for More Definite Statement, filed by Defendant Karl Broussard.[1] The motion was referred to Magistrate Judge David J. Ayo for Report and Recommendation ("R&R").[2] The Magistrate Judge has now issued his report and recommends that the motion be granted in part and denied in part.[3] Broussard objects to the R&R, to which Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), has filed a response.[4] For the reasons that follow, the Court ADOPTS the Report and Recommendation IN PART.

## I.
### BACKGROUND

As set forth in the R&R, Broussard began employment as Chief Executive Officer ("CEO") of Hospice of Acadiana ("HOA") on January 1, 2016.[5] On some unspecified date, following an "internal review and investigation," HOA "discovered that Mr. Broussard was engaging in questionable and improper charges with his HOA AmEx Card."[6] On June 7, 2021, Broussard

---

[1] ECF No. 14.
[2] ECF No. 16.
[3] ECF No. 20.
[4] ECF Nos. 21, 22.
[5] ECF No. 4 at 3, ¶ 15; *see also* ECF No. 20 at 1.
[6] ECF No. 4 at 4, ¶ 19.

tendered his resignation.[7] Travelers issued a Crime Insurance Policy to HOA, effective May 2, 2021 to May 2, 2022.[8] On September 20, 2021, HOA submitted a claim against the policy for losses incurred as a result of Broussard's unauthorized use of HOA's AmEx card.[9] On January 25, 2022, Travelers settled HOA's claim by payment of $508,691.95, and HOA assigned its rights against Broussard to Travelers.[10]

On March 11, 2022, Travelers, as HOA's subrogee, filed this suit against Broussard, asserting claims for conversion, unjust enrichment, fraud, "breach of fiduciary duty," and breach of contract.[11] By his motion, Broussard seeks dismissal of the claims of unjust enrichment and breach of contract for failure to state a claim; he seeks dismissal of the claim of fraud for failure to allege fraud with the particularity required by Rule 9(b); and he seeks dismissal of "all of Plaintiff's claims arising from alleged conduct prior to March 11, 2019 . . . on the basis that they have prescribed under the three (3)-year hybrid prescriptive period set forth in La. R.S. 12:1502[D].[12] Alternatively, Broussard moves for a more definite statement under Rule 12(e).[13]

The Magistrate Judge recommends that the motion be denied to the extent Broussard seeks dismissal based upon prescription, finding the ten-year prescriptive period under La. Civ. Code art. 3499 (rather than the prescriptive period set forth in La. R.S. 12:1502(D)) applies to claims of intentional breach of fiduciary duty asserted by a nonprofit business entity against an officer of

---

[7] *Id.* at ¶ 21.
[8] *Id.* at 2, ¶ 10.
[9] *Id.* at 4, ¶ 17.
[10] *Id.* at 4-5, ¶¶ 22-24.
[11] ECF No. 1; *see also id.* at 6 (asserting claim for "breach of fiduciary duty"). The Magistrate Judge construed this claim as solely a claim for intentional breach of fiduciary duty. In its response to Broussard's objection, Travelers affirmed the Magistrate Judge's construction. ECF No. 22 at 11, 13. Therefore, the Court pretermits discussion of Broussard's motion to the extent it seeks dismissal of a claim for negligent breach of fiduciary duty.
[12] ECF No. 14 at 2, ¶ 3; *see also* ECF No. 14-1 at 13-14.
[13] ECF No. 14 at ¶ 5.

that entity.[14] The Magistrate Judge additionally recommends that: (1) the claim of unjust enrichment be dismissed; (2) to the extent the breach of contract claim is based upon the general obligation of good faith in the performance of contracts set forth in the Louisiana Civil Code, it be dismissed; to the extent the breach of contract claim is based upon a breach of a particular contractual provision, Travelers should be permitted to amend the Complaint to set forth the claim with sufficient factual allegations to satisfy Rule 8(a); (3) Travelers be permitted to amend the Complaint to set forth the claim of fraud in conformity with Rule 9(b); and (4) that the motion for more definite statement be denied "based on the recommendation that an opportunity to amend be permitted in this case," subject to Broussard's right to re-urge the motion after amendment of the Complaint.[15] Broussard objects "only to the portion of the Magistrate Judge's report that found that La. R.S. 12:1502 does not apply to Plaintiff's claims," and moves the Court to "dismiss those claims that are time-barred" under that statute.[16]

## II.
### APPLICABLE LAW

Pursuant to *Erie Railroad Co. v. Tompkins*, a federal court sitting in diversity applies the substantive law of the forum state.[17] State statutes of limitations, as well as rules that are an "integral part of the statute of limitations," such as statutes of repose and tolling provisions, are treated as substantive for purposes of the *Erie* doctrine.[18] Accordingly, the Court applies Louisiana substantive law in its determination of whether Travelers' claims against Broussard have prescribed.

---

[14] ECF No. 20 at 5-7.
[15] *Id.* at 11.
[16] ECF No. 21 at 3.
[17] *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817 (1938); *see also Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).
[18] *Camacho v. Ford Motor Company*, 993 F.3d 308, 311 (5th Cir. 2021); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980); *Bloom v. Aftermath Public Adjusters, Incorporated*, 902 F.3d 516, 517 (5th Cir. 2018).

To determine Louisiana law, district courts are "bound to apply the law as interpreted by the state's highest court."[19] Where such decisions are absent, the court must make an "*Erie*-guess" and "determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."[20] The Louisiana Supreme Court has not addressed whether the prescriptive period set forth in La. R.S. 12:1502(D) applies to claims against officers of nonprofit corporations. Accordingly, the Court must make an *Erie*-guess as to how the Louisiana Supreme Court would rule on this issue.

In making this determination, courts "must employ Louisiana's civilian methodology in the same manner as would the Louisiana Supreme Court."[21] As set forth in the Louisiana Civil Code, the only "sources of law are legislation and custom."[22] In Louisiana, "[l]egislation is a solemn expression of legislative will."[23] Therefore, courts must "look first to Louisiana's Constitution, its codes, and statutes, because the 'primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts.'"[24] Stare decisis is foreign to the Civil Law. Nevertheless, courts are guided by decisions of the Louisiana appellate courts—particularly when those decisions rise to the level of *jurisprudence constante*—but they are "not strictly bound by them."[25]

---

[19] *Barfield v. Madison Cty.*, 212 F.3d 269, 271-72 (5th Cir. 2000)
[20] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003); *see also Erie*, 304 U.S. at 79-80.
[21] *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014).
[22] La. Civ. Code art. 1; *see also Boyett*, *supra*.
[23] La. Civ. Code art. 2; *see also Boyett*, *supra*.
[24] *Boyett*, *supra* (quoting *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)).
[25] *Boyett* at 608 (quoting *Transcon. Gas*, *supra*). The Louisiana Supreme Court has summarized the civilian doctrine of *jurisprudence constante* as follows:
> [W]hile a single decision is not binding on our courts, when a series of decisions form a constant stream of uniform and homogenous rulings having the same reasoning, *jurisprudence constante* applies and operates with considerable persuasive authority. Thus, prior holdings by this court are persuasive, not authoritative, expressions of the law.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 79 So. 3d 246, 256 (La. 2011) (internal citations and quotation marks omitted).

When interpreting a Louisiana statute, the "fundamental question" is legislative intent; legislative intent is ascertained by the rules of statutory construction.[26] The starting point of statutory construction is the language of the statute.[27] "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[28] If the language of the law "is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."[29] "Laws on the same subject matter must be interpreted in reference to each other."[30] Where multiple statutes addressing the same subject matter are in conflict and cannot be harmonized, "the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character."[31]

### III.
### DISCUSSION

The issue raised by the objection is whether the prescriptive period set forth in La. Civ. Code art. 3499 governs in this matter (as Travelers contends), or whether the prescriptive periods set forth in La. R.S. 12:1502 control (as Broussard contends). Civil Code article 3499 instructs, "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."[32] Therefore, if another applicable prescriptive period is provided by legislation, then

---

[26] *Carollo v. Dep't of Transp. & Dev.*, 2021-01670, p. 12 (La. 9/1/22); 346 So.3d 751, 759; *Pumphrey v. City of New Orleans*, 2005-0979, p. 10 (La. 4/4/06); 925 So.2d 1202, 1209.
[27] *Williams v. Bestcomp, Inc.*, 2022-00100, 2022 WL 17547074, at *6 (La. 12/9/22); --- So.3d ---.
[28] La. Civ. Code art. 9; *see also* La. R.S. 1:4; *Williams*, *supra*.
[29] La. Civ. Code art. 10.
[30] La. Civ. Code art. 13; *see also Pumphrey*, 925 So.2d at 1210.
[31] *Pumphrey* at 1210.
[32] La. Civ. Code art. 3499; *see also* La. Code Civ. P. art. 422 ("A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess"); La. Civ. Code art. 3447 ("Liberative prescription is a mode of barring actions as a result of inaction for a period of time").

that prescriptive period will govern, rather than La. Civ. Code art. 3499.[33] La. R.S. 12:1502 codifies the prescriptive periods for actions against persons who control business organizations, providing in pertinent part:

> A. The provisions of this Section shall apply to all business organizations formed under the laws of this state and shall be applicable to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated. . . .
>
> B. The term "business organization" includes any entity formed under the laws of this state engaged in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency. This Section shall apply without limitation to corporations, incorporated or unincorporated associations, partnerships, limited liability partnerships, partnerships in commendam, limited liability companies, or cooperative associations or other entities formed under the laws of this state.
>
> . . . .
>
> D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.
>
> E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and venue.[34]

Thus, claims for intentional tortious misconduct asserted against an officer of any "business organization" formed under Louisiana law must be brought within two years of the tortious conduct, or within two years from the date the conduct is discovered or should have been discovered, but no later than three years from the date of the alleged conduct.

---

[33] *See e.g. Grabert v. Iberia Par. Sch. Bd.*, 93-2715, p. 2 (La. 7/5/94); 638 So.2d 645, 647; *Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.*, 2004-2482, p. 10 (La. 4/12/05); 898 So.2d 1260, 1267.
[34] La. R.S. 12:1502.

Broussard asserts § 1502, rather than La. Civ. Code art. 3499, applies to the claims asserted against him, because: (1) the claims are based on his alleged activities as CEO of HOA, (2) HOA was formed under the laws of the State of Louisiana, and (3) HOA "is a 'corporation' for purposes of § 1502(B)."[35] Broussard contends that while HOA is a non-profit corporation, "it is engaged in a 'trade,' an 'occupation,' and a 'profession[] licensed by' the State of Louisiana: the provision of medical services."[36] Broussard argues that the statute's use of the disjunctive "or" means that "in addition to engaging in 'commercial activity,' an entity can gain coverage under § 1502 by engaging in 'any trade,' 'occupation,' or 'profession,' 'including but not limited to professions licensed by a state or other governmental agency.'"[37] Finally, because § 1502(D) mandates that any claim covered by that provision must be brought no more "than three years from the date of the alleged act or omission," and because this suit was filed on March 11, 2022, Broussard seeks dismissal of any claim (or portion thereof) premised upon acts or omissions committed prior to March 11, 2019.[38]

Travelers asserts Louisiana nonprofit corporations do not constitute "business organizations" as defined in § 1502(B), and therefore the prescriptive period set forth in § 1502(D) is inapplicable to this matter.[39] Travelers argument focuses solely on the first sentence of § 1502(B) which, again, states: "The term 'business organization' includes any entity formed under the laws of this state engaged in any trade, occupation, profession, or other commercial activity." Travelers contends that the Legislature's use of the term "commercial activity," by definition, requires that the business organization be a for-profit entity. It then contends that in order to give effect to the

---

[35] ECF No. 21-1 at 3-4.
[36] *Id.* at 4 (second alteration in original).
[37] *Id.* at 5.
[38] *Id.* at 8-9.
[39] ECF No. 22 at 6-7.

word *other* (*i.e.*, "or other commercial activity") the prior terms—"trade, occupation, profession"—must also be conducted for pecuniary purposes.[40] Based upon this argument, Travelers contends the prescriptive periods set forth in § 1502 do not apply to Louisiana nonprofit corporations. In support, Travelers relies upon an unpublished opinion from the Louisiana First Circuit Court of Appeals, *Hodge v. Babin*.[41]

In *Hodge*, two members of a homeowners' association were involved in an altercation at the conclusion of a homeowners' association meeting and brought claims against each other for battery. Babin additionally asserted a claim of intentional breach of fiduciary duty, alleging Hodge (as President of the homeowners' association) intentionally withheld funds belonging to Babin that were paid by the association's insurer to cover damages to Babin's condominium caused by Hurricane Gustav eight years prior. The trial court rendered judgment against Hodge for $6,800.00—*i.e.*, the amount of funds received by the homeowners' association for the benefit of Babin that Hodge prevented Babin from receiving. On appeal, Hodge argued the trial court erred in not finding Babin's claim had prescribed pursuant to La. R.S. 12:1502(D).[42] The First Circuit rejected this argument, finding § 1502 was not applicable, and held that the ten-year prescriptive period under La. Civ. Code art. 3499 applied, citing the Louisiana Supreme Court's decision in *Mary v. Lupin Foundation*.[43] However, the undersigned notes that the *Mary* decision issued almost a decade before the enactment of § 1502. Prior to the enactment of § 1502, claims for breach of fiduciary duty against persons who control business entities (whether for-profit or nonprofit) were

---

[40] *Id.* at 9-10.
[41] *Hodge v. Babin*, 2018-0834, 2018 WL 6717012, at * 3 (La.App. 1 Cir. 12/21/18) (unpublished).
[42] *Id.* at *3.
[43] *Id.* (citing *Mary v. Lupin Foundation*, 609 So.2d 184, 188 (La. 1992)).

governed by the general, ten-year liberative prescription period set forth in the Louisiana Civil Code.[44] The *Hodge* court then examined section 1502 and found it to be inapplicable, reasoning:

> Section (A) of La. R.S. 12:1502 provides that it applies to all officers and directors of "business organizations." La. R.S. 12:1502(A). For purposes of its application, Section (B) states that "business organizations" include any entity "engaged in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency." We must presume that the Legislature intended this language to have meaning in determining which entities are to be considered "business organizations" within the contemplation of La. R.S. 12:1502. The [homeowners' association] is a nonprofit corporation and is not engaged in any trade, occupation, or profession. Nor does the record reflect that it is engaged in any "commercial activity," which is defined as "[a]n activity, such as operating a business, conducted to make a profit." Black's Law Dictionary (10th ed. 2014). Accordingly, the prescriptive periods provided in La. R.S. 12:1502 do not apply to Mr. Hodge's actions as an officer of the [homeowners' association]. The prescriptive period applicable to Mr. Babin's claim is the ten-year prescriptive period provided by La. C.C. art. 3499 for personal actions.[45]

To the extent the First Circuit found § 1502(B) excludes *all* nonprofit business entities from its application (as Travelers argues),[46] the Court would disagree, as discussed below.[47] Neither counsel nor the Court have located any other Louisiana cases discussing § 1502 in the context of a nonprofit business organization.

As noted in *Hodge*, Black's Law Dictionary defines "commercial activity" as "[a]n activity, such as operating a business, conducted to make a profit," but that definition says nothing

---

[44] *Mary* at 188; *Levy v. Billeaud*, 443 So.2d 539, 545 (La. 1983); *see also* La. Civ. Code art. 3499, comment (a). The *Hodge* court additionally cited *Southern Univ. Sys. Foundation v. Slaughter*, No. 2013-0791, 2014 WL 4374099, at *5 (La.App. 1 Cir. 9/4/14) (unpublished). The *Southern* decision made no reference to § 1501, but merely cited *Mary* for the proposition that a claim for breach of fiduciary duty against an officer of a nonprofit corporation is governed by the ten-year liberative prescriptive period set forth in La. Civ. Code art. 3499.
[45] *Hodge* at *4 (emphasis, citation and footnote omitted).
[46] *See e.g.* ECF No. 22 at 4 ("the prescriptive limitations in Louisiana Revised Statute § 12:1502 applicable to officers of 'business organizations' engaged in 'commercial activity' do not apply to nonprofit organizations").
[47] To the extent the First Circuit found the homeowners' association was not a "business organization" as defined in § 1502(B) because it was a nonprofit corporation that did not engage in any trade, occupation, profession, or other commercial activity (as Broussard contends), the Court agrees with its construction of the statute. However, that construction appears unlikely, as the association appears to have in engaged in commercial activity by procuring and collecting insurance for its members, and likely collected homeowners' association dues.

about whether a business entity is a for-profit or nonprofit organization.[48] Numerous nonprofit organizations (*e.g.* hospitals, nursing homes, hospice facilities) engage in profit-earning "commercial activity," often in competition with for-profit organizations.[49] What distinguishes a for-profit business organization from a nonprofit organization is what is done with those profits. Whereas a business corporation is organized for the pecuniary profit of its shareholders, a nonprofit corporation must utilize its earnings for the purposes set forth in its articles of incorporation and is prohibited from distributing any surplus to its members or shareholders.[50] With this understanding in mind, the definition of "business organization" in § 1502(B)—"'business organization' includes any entity . . . engaged in any trade, occupation, profession, or other commercial activity"—would not appear to exclude an entity merely because it is organized as a nonprofit entity. Furthermore, Chapter 1 of Title 12 states that the word *includes* "denotes a partial definition," and the word *entity* includes, *inter alia*, "a domestic and foreign business corporation, a domestic and foreign nonprofit corporation, an estate, a trust, [and] a domestic and foreign unincorporated entity . . . ."[51] Thus, the first sentence of § 1502(B) is not exhaustive, and the word *entity* includes nonprofit corporations. Nevertheless, the Court does agree with Travelers that use

---

[48] *Commercial Activity*, BLACK'S LAW DICTIONARY, (11th ed. 2019).
[49] *See e.g. Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 299 (1985); 1 Marilyn E. Phelan, NONPROFIT ORGANIZATIONS: LAW AND TAXATION § 1:1 (database updated Oct. 2022); 1 James D. Cox and Thomas Lee Hazen, TREATISE ON THE LAW OF CORPORATIONS § 1.18 (database updated Dec. 2022); 1 W. Cole Durham & Robert Smith, RELIGIOUS ORGANIZATIONS AND THE LAW § 10:14 (database updated Dec. 2022); Henry B. Hansmann, *The Role of Nonprofit Enterprise*, 89 Yale L.J. 835, 840-41 (1980). According to the Centers for Disease Control and Prevention, in 2018, 21.3% of all hospice providers were nonprofit organizations. *See* U.S. Dept. of Health and Human Services, Centers for Disease Control and Prevention, National Center for Health Statistics, Vital and Health Statistics, *Post-acute and Long-term Care Providers and Services Users in the United States, 2017-2018*, Series 3, Number 47 (May 2022), available at: https://stacks.cdc.gov/view/cdc/115346.
[50] La. R.S. 12:266; La. R.S. 12:266(F); *see also* 1A FLETCHER CYC. CORP. §§ 68.05, 112 (database updated Sep. 2022).
[51] La. R.S. 12:1-140(9), (12); *see also* La. R.S. 12:226 comment to 1968 revision ("Provisions relating to nonprofit corporations have been conformed generally to those relating to business corporations"); *Mary v. Lupin Foundation*, 609 So.2d 184, 187 (La. 1992) (business corporation laws may be referred to for guidance in cases involving nonprofit corporations).

of the word "other" (*i.e.*, "or other commercial activity") indicates that the preceding terms—"trade, occupation, profession"—must have some commercial purpose, as opposed to purely eleemosynary organizations.[52]

Further support for this construction is found in the Louisiana Constitution.[53] Article VII, section 21 of the Louisiana Constitution exempts property owned by certain nonprofit corporations (including those organized for "health" purposes) from ad valorem taxation unless, *inter alia*, such property is "used for commercial purposes *unrelated* to the exempt purposes of the corporation or association."[54] Thus, the Louisiana Constitution explicitly recognizes that nonprofit corporations can engage in commercial activity, and they may retain their exemption from ad valorem taxation *if* that commercial activity is related to the purpose for which the organization was formed.[55]

Moreover, Travelers ignores the second sentence of section 1502(B), which states, "This Section shall apply <u>without limitation</u> to corporations, incorporated or unincorporated associations, partnerships, limited liability partnerships, partnerships in commendam, limited liability companies, or cooperative associations or other entities formed under the laws of this state."[56] "Corporation," as defined in Title 12, includes both for-profit and nonprofit corporations.[57] An "unincorporated association" is an entity formed "for a common, *nonprofit* purpose."[58] As Title

---

[52] *See e.g. Alamo*, 471 U.S. at 297-98; *Religious, Charitable and Other Nonprofit Institutions*, in EMPLOYER'S GUIDE TO FAIR LABOR STDS. ACT § 246 (Susan Prince ed., Jan. 2023 supplement).
[53] *See Ogea v. Merritt*, 2013-1085, p. 11 (La. 12/10/13); 130 So.3d 888, 898 (when engaging in statutory interpretation, courts "must assume the Legislature was aware of existing laws on the same subject") (quoting *Foti v. Holliday*, 09-0093, p. 6 (La. 10/30/09), 27 So.3d 813, 817.
[54] La. Const. art. VII, § 21(B)(1)(a)(i) (1974) (emphasis added).
[55] *See also Hotel Dieu v. Williams*, 410 So.2d 1111, 1112 (La. 1982); *Willis-Knighton Med. Ctr. v. Edmiston*, 39,374, p. 3 (La.App. 2 Cir. 4/6/05); 899 So.2d 736, 738.
[56] La. R.S. 12:1502(B) (emphasis added).
[57] La. R.S. 12:1-140(4) ("'Corporation'", 'domestic corporation', or 'domestic business corporation' means a corporation for profit, which is not a foreign corporation, incorporated under or subject to the provisions of this Chapter"); La. R.S. 12:201(7) ("'Corporation' or 'nonprofit corporation' means a corporation formed under this Chapter").
[58] La. R.S. 12:501 (emphasis added).

12's definitions of "entity," "corporation," and "unincorporated association" explicitly encompass non-profit business entities, it would appear § 1502 governs the prescriptive period applicable to domestic nonprofit corporations, so long as they are "engaged in any trade, occupation, profession, or other commercial activity."

For all of the reasons discussed, the Court finds La. R.S. 12:1502(D) provides the applicable prescriptive period for claims of intentional breach of fiduciary duty by an officer of a domestic nonprofit business organization, provided the business organization is engaged in some form of "trade, occupation, profession, or other commercial activity."[59] However, because the Complaint: (1) does not contain sufficient factual information to establish that HOA is a business entity engaged in a "trade, occupation, profession, or other commercial activity," and (2) does not set forth sufficient information to establish when prescription began to run, Broussard's partial motion to dismiss on the grounds of prescription cannot be adjudicated at this time.[60] Nevertheless, it appears much of the information Broussard seeks should be provided once Travelers amends its claim of fraud, as recommended by the Magistrate Judge.[61] To the extent the amended complaint does not provide sufficient information to determine whether any other claims have prescribed, or does not provide sufficient information to establish that HOA engages in commercial activity, it would appear such information could be easily gained through written discovery, without the

---

[59] La. R.S. 12:1501(B).
[60] Broussard does not argue in his objection that, as an alternative to dismissal, the Court should grant his motion for more definite statement on the issue of prescription. While the Court considered granting such relief *sua sponte*, it finds (although admittedly a close call) that given the liberal pleading standard set forth in Rule 8(a), the more appropriate action here is to decline to *sua sponte* order a more definite statement. *See e.g. Doe ex re. Doe v. Harris*, 2014 WL 4207599, *6; *Boudreaux v. Shell Oil Co.*, 2014 WL 348545, at *5 (E.D. La. Jan. 31, 2014); *but see Huffman v. Squibb*, 2016 WL 6024532, at *3 (E.D. La. Oct. 14, 2016); *see generally Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132-33 (5th Cir. 1959); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIV. § 1376 (A. Benjamin Spencer ed., 3rd ed., April 2022 update).
[61] Again, neither party objected to this particular recommendation.

necessity of incurring the expense of deposition testimony.[62] Like the Magistrate Judge, "this Court is inclined to believe records of alleged improper American Express charges by Broussard and subsequent efforts to conceal such charges are within the possession of HOA or Travelers."[63] For these reasons, the Court OVERRULES Broussard's objection.

### IV.
### CONCLUSION

For the reasons set forth in this Ruling, the Report and Recommendation is ADOPTED IN PART as follows: the R&R is adopted in all respects, with the exception of Section I ("Prescription of Claims).[64] Accordingly,

1) To the extent the motion seeks dismissal based upon prescription, the motion is DENIED for the reasons set forth in this Ruling;

2) The motion is GRANTED with respect to the claim of unjust enrichment and that claim is DISMISSED;

3) Plaintiff is ORDERED to amend its claim of breach of contract in conformity with Rule 8(a) within twenty-one (21) days;

4) Plaintiff is ORDERED to amend its claim of fraud in conformity with Rule 9(b) within twenty-one (21) days;

5) The Motion for More Definite Statement is DENIED, subject to Broussard's right to re-urge the motion after receipt of the amended complaint.

THUS DONE in Chambers on this 27th day of January, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[62] For example, it would seem the issue of whether HOA engages in commercial activity could be resolved with a simple request for admission.
[63] ECF No. 20 at 11.
[64] *See* ECF No. 20 at 5-7.